United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRESCIA ANTHUANE GARRO PINCHI,<br><br>Plaintiff,<br><br>v.<br><br>SERGIO ALBARRAN, et al.,<br><br>Defendants. | Case No.  25-cv-10831-PCP<br><br>**ORDER GRANTING MOTION TO MODIFY PRELIMINARY INJUNCTION**<br><br>Re: Dkt. No. 12 |

Plaintiff Frescia Garro Pinchi is an asylum-seeker from Peru who entered the United States without lawful admission in April 2023. The same day, agents of the Department of Homeland Security briefly detained Ms. Garro Pinchi before releasing her on her own recognizance pursuant to 8 U.S.C. § 1226(a), which necessitated a finding that she posed no flight risk or danger to the public. *See* 8 C.F.R. § 1236.1(c)(8)*; Garro Pinchi v. Noem* ("*Garro Pinchi III*"), 813 F. Supp. 3d 973, 1019 (N.D. Cal. 2025). In July 2025, DHS agents arrested Ms. Garro Pinchi as she was leaving a routine hearing at the San Francisco immigration court. Hours later, she commenced this action by filing a petition for a writ of habeas corpus and a concurrent motion for a temporary restraining order, later followed by a motion for a preliminary injunction. The Court found that Ms. Garro Pinchi's detention without prior notice and a bond hearing before a neutral immigration judge likely violated her due-process rights under the Fifth Amendment. The Court therefore granted her motions for a temporary restraining order and preliminary injunction, ordered her immediate release, and enjoined the government from re-detaining her absent such process during the pendency of this action. *See Garro Pinchi v. Noem* ("*Garro Pinchi I*"), No. 25-CV-05632,

2025 WL 1853763, at *4 (N.D. Cal. July 4, 2025); *Garro Pinchi v. Noem* ("*Garro Pinchi II*"), 792 F. Supp. 3d 1025, 1038 (N.D. Cal. 2025).[1]

Over the past year, DHS has imposed a variety of new conditions of release on Ms. Garro Pinchi. DHS did so without prior notice or an opportunity for Ms. Garro Pinchi to argue before a neutral arbiter that DHS lacks a legitimate reason for imposing the conditions. The conditions include requirements that she (1) complete a virtual check-in within a random 30-minute period each Monday morning by uploading a photo of herself to a "SmartLink" application; (2) download the SmartLink application to her mobile device, which enables DHS to track her location when the application is in use; (3) attend in-person check-ins with an Intensive Supervision Appearance Program (ISAP) every four weeks; (4) attend additional check-ins with Immigration and Customs Enforcement's Enforcement and Removal Operations (ERO) annually; and (5) except in emergency situations, seek approval two weeks in advance of any travel either "outside of the [B]ay Area," outside of the boundaries displayed on a physical map provided to Ms. Garro Pinchi by DHS, or more than 75 miles from her home address.[2] It is undisputed that Ms. Garro Pinchi was not subject to any of these conditions prior to her re-detention and court-ordered release in 2025. Instead, between her initial release in April 2023 and her re-detention in July 2025, DHS required only that Ms. Garro Pinchi appear at its San Francisco office on one date in May 2023.[3] The parties dispute whether she did so.

---

[1] Ms. Garro Pinchi later amended her complaint to add new parties and assert additional claims under the Administrative Procedure Act. The Court severed this action from the APA action, which is proceeding under the original case number. *See* Dkt. No. 84, *Garro Pinchi v. Mullin*, Case No. 25-cv-5632.

[2] *See* Declaration of Frescia Anthuane Garro Pinchi, Dkt. No. 12-2 ¶¶ 8–12 (describing conditions, including travel limitation based on the physical map depicted at Dkt. No. 12-2); Email from ICE Enforcement and Removal Operations (May 28, 2026), Dkt. No. 12-1, at 5 (advising Ms. Garro Pinchi's counsel that "[i]f she is going to travel outside of the bay area, she must notify ISAP with her travel itinerary two weeks prior to obtain approval from ERO"); Declaration of Deportation Officer Jarvin Li, Dkt. No. 16-1 ¶¶ 16–18 (describing conditions, including 75-mile travel limitation).

[3] The government's position as to the conditions of Ms. Garro Pinchi's initial release in 2023 has shifted over the course of this litigation. At first, the government made no representation that Ms. Garro Pinchi had been subject to any in-person check-in requirement. *See, e.g.*, Declaration of Deportation Officer Anthony D. Lazalde, Jr., Dkt. 20-1, *Garro Pinchi v. Noem*, No. 5:25-cv-05632. Then, eight months into the case, the government asserted for the first time that Ms. Garro Pinchi had been subject to a monthly in-person check-in requirement. *See* Respondents'

United States District Court
Northern District of California

Ms. Garro Pinchi argues that the manner in which DHS imposed these conditions violated her due-process rights. She therefore moves to modify the Court's prior order granting a preliminary injunction and to enjoin the government from imposing supervision conditions that did not exist prior to her July 2025 re-detention without notice and a hearing to determine whether a material change of circumstances justifies such conditions. For the reasons that follow, the motion is GRANTED.

### LEGAL STANDARDS

"A district court has inherent authority to modify a preliminary injunction in consideration of new facts." *A & M Records, Inc. v. Napster*, 284 F.3d 1091, 1098 (9th Cir. 2002); *see also Credit Suisse First Boston Corp. v. Grunwald*, 400 F.3d 1119, 1124 (9th Cir. 2005). "[The] party seeking modification … bears the burden of establishing that a significant change in facts or law warrants revision … of the injunction." *Alto v. Black*, 738 F.3d 1111, 1120 (9th Cir. 2013) (citation modified) (quoting *Sharp v. Weston,* 233 F.3d 1166, 1170 (9th Cir. 2000)). In determining whether a change warrants a modification, a court's "inquiry should be guided by the same criteria that govern the issuance of a preliminary injunction," i.e., the *Winter* factors. *Karnoski v. Trump*, 926 F.3d 1180, 1198 (9th Cir. 2019). Under these factors, the party seeking an injunction "must establish that [1] [s]he is likely to succeed on the merits, [2] that [s]he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in h[er] favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The final two factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Opposition to Motion for Clarification, Dkt. No. 6, at 4. The government based that assertion on DHS's April 2023 order releasing Ms. Garro Pinchi on recognizance, which stated that she "must report" to DHS's San Francisco office on May 16, 2023. *See* Dkt. No. 6-2, at 10. In its opposition to the instant motion, however, the government abandons its argument that Ms. Garro Pinchi was previously subject to a monthly check-in requirement, instead conceding that she was required to appear only once on May 16, 2023. *See* Li Decl., Dkt. No. 16-1 ¶ 11.

United States District Court
Northern District of California

United States District Court
Northern District of California

**ANALYSIS**

Ms. Garro Pinchi asserts that DHS's imposition of no fewer than five new supervisory conditions since July 2025 constitutes "a significant change in facts" warranting revision of the Court's preliminary injunction. *Alto*, 738 F.3d at 1120. The government does not dispute that the conditions are a significant change, and the Court agrees that they are. The only question, then, is whether the *Winter* factors favor a modification of the injunction.

**I.      Likelihood of Success on the Merits**

**A.      The Court likely has jurisdiction to resolve Ms. Garro Pinchi's challenge to the new supervisory conditions.**

The government argues that the Court lacks jurisdiction to address the merits of Ms. Garro Pinchi's challenge to the new supervisory conditions because those conditions do not amount to "custody." The Court disagrees.

Under the applicable habeas statute, 28 U.S.C. § 2241(c)(3), federal district courts have jurisdiction to hear habeas corpus challenges only by persons claiming to be held "in custody in violation of the Constitution or laws or treaties of the United States." The "essence of habeas corpus is an attack by a person in custody upon the legality of that custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Historically, the 'chief use of habeas corpus' was 'to seek the release of persons held in actual, physical custody in prison or jail.'" *Munoz v. Smith*, 17 F.4th 1237, 1241 (9th Cir. 2021) (quoting *Jones v. Cunningham*, 371 U.S. 236, 238 (1963)). But the Supreme Court has recognized that "besides physical imprisonment, there are other restraints on a [person]'s liberty, restraints not shared by the public generally, which … support the issuance of habeas corpus." *Jones*, 371 U.S. at 240. Conditions of supervision may therefore be "custodial" and provide a basis for habeas relief where such conditions "amount[] to a significant, severe, and immediate restraint on physical liberty." *Munoz*, 17 F.4th at 1244 (citation modified). But conditions that do "not limit [the petitioner's] physical movement," "require h[er] to go anyplace," or "prevent h[er] from going anywhere" are not custodial in nature. *Id.* at 1245 (citation modified).

Ms. Garro Pinchi contends that the Court need not determine whether the new supervisory conditions she challenges alone amount to "custody" because habeas jurisdiction attached at the

time her original petition was filed, when she was undisputedly in custody by virtue of her detention. *See Carafas v. LaVallee*, 391 U.S. 234, 238 (1968). But even where a petitioner is detained and therefore in custody, a challenge to the conditions of the petitioner's custody, rather than the fact or duration thereof, is not cognizable in habeas. *See Ramirez v. Galaza*, 334 F.3d 850, 855 (9th Cir. 2003). So if the supervisory conditions challenged here are non-custodial, the Court cannot grant relief from such conditions in this habeas action even if the Court retains jurisdiction to resolve Ms. Garro Pinchi's challenge to her detention.

Nonetheless, the new supervisory conditions imposed on Ms. Garro Pinchi are likely custodial because they place significant restraints on Ms. Garro Pinchi's physical liberty. For example, Ms. Garro Pinchi must attend in-person check-ins with ISAP every four weeks, in addition to an annual check-in with ERO—that is, she must physically travel to roughly 14 such check-in meetings per year. Ms. Garro Pinchi attests that doing so requires her to travel one hour in each direction, and that she is often forced to be physically present at ISAP's office for several hours during each visit.[4] DHS also restricts the locations to which Ms. Garro Pinchi can travel without advance approval, varyingly instructing that she must remain within 75 miles of her home, within the Bay Area, or within an area of northern California designated on a map. Advance approval generally requires two weeks, and even in emergency situations Ms. Garro Pinchi must seek expedited approval from DHS.[5] She "must not only faithfully obey these restrictions and conditions but … must live in constant fear that a single deviation, however slight, might be enough to result in h[er] being returned to [detention]," and she "can be rearrested at any time [DHS] believes [s]he has violated a term or condition of his parole." *Jones*, 371 U.S. at 242. Multiple courts have recently concluded that DHS's imposition of restraints like geographic limitations on travel and frequent in-person check-ins are custodial in nature. *See Harrington v. Albarran*, No. 26-CV-01889-JST, 2026 WL 800113, at *4 (N.D. Cal. Mar. 23, 2026) (collecting cases).

---

[4] Garro Pinchi Decl., Dkt. No. 12-2 ¶ 10.

[5] Li Decl., Dkt. No. 16-1 ¶ 18.

United States District Court
Northern District of California

The government argues that these supervisory conditions do not amount to custody based primarily on *Munoz*. There, the Ninth Circuit found no habeas jurisdiction to challenge supervisory conditions requiring the petitioner to pay a $30 monthly fee, wear an ankle monitor, get approval for and disclose the location of his residence, and not live with more than three persons who had been released from prison. *See* 17 F.4th at 1240. As another court in this district has explained, however, *Munoz* is distinguishable:

> In that case, the Ninth Circuit noted, without definitively resolving the issue, that the sex offender registration and tracking requirements "could be regarded as collateral consequences of conviction," analogous to the loss of the right to vote, "not 'custodial' requirements." *Id.* at 1243, 1246. By contrast, the conditions imposed on [Ms. Garro Pinchi] were unrelated to any conviction. The *Munoz* court also drew an express contrast with more burdensome measures that could rise to the level of custody, including requirements to register in person with the police every three months and appear in person at a registration site before leaving home for more than seven days, traveling internationally, or changing residence, employment, or contact information. *Id.* at 1244. [Ms. Garro Pinchi], unlike the petitioner in *Munoz*, must appear at regular supervision check-ins and may not travel outside of a narrow radius in Northern California. *Cf. id.* at 1245 ("The electronic monitoring ... does not limit [Munoz's] physical movement, nor does it require him to go anyplace."). In short, *Munoz* does not undermine but rather supports the view that the conditions imposed by ICE here constitute custody.

*Harrington*, 2026 WL 800113, at *5 (N.D. Cal. Mar. 23, 2026).

The government also contends that other cases finding DHS's supervisory conditions to be custodial all involved continuous ankle monitoring, rather than mere phone-based location monitoring. But in *Kegel v. Rose*, the Eastern District of Pennsylvania squarely rejected the argument that a petitioner was no longer in custody simply "because [DHS] deescalated [his] participation in ISAP by removing his ankle bracelet and enrolling him in SmartLINK," reasoning that "a petitioner does not have to be supervised on a continuous basis to be in custody." No. 26-CV-1213, 2026 WL 1018335, at *5 (E.D. Pa. Apr. 15, 2026) (citing *Barry v. Bergen Cnty. Prob. Dep't*, 128 F.3d 152 (3d Cir. 1997)). More importantly, the fact or manner of electronic monitoring plays little role in the analysis. In *Munoz*, the Ninth Circuit "ha[d] little difficulty concluding that [the petitioner]'s electronic monitoring requirement … d[id] not cause him to be

United States District Court
Northern District of California

United States District Court
Northern District of California

'in custody,'" even though the petitioner was subject to continuous ankle monitoring. 17 F.4th at 1245. That was because the monitoring "d[id] not limit his physical movement" or "require him to go anyplace." *Id.* So what distinguishes this and other cases involving custodial supervisory conditions from *Munoz* is not the use of one type of location monitoring over another but the imposition of geographic limitations on travel and a regular in-person check-in requirement.

Both the Supreme Court and the Ninth Circuit have recognized that conditions compelling a person's physical presence at specified times and locations are custodial. In *Hensley v. Municipal Court*, 411 U.S. 345, 351 (1973), for example, the Supreme Court held that "a convict released on his own recognizance pending execution of his sentence is 'in custody' because he is obligated to appear at times and places ordered by the court" and therefore "cannot come and go as he pleases." *Williamson v. Gregoire*, 151 F.3d 1180, 1182 (9th Cir. 1998) (summarizing and quoting *Hensley*, 411 U.S. at 351). And in *Dow v. Circuit Court of the First Circuit,* 995 F.2d 922 (9th Cir.1993) (per curiam), the Ninth Circuit "held that a sentence of 14 hours of attendance at an alcohol rehabilitation program renders someone 'in custody'" because "requiring [a person]'s physical presence at a particular place, significantly restrains appellant's liberty to do those things which free persons in the United States are entitled to do." *Williamson*, 151 F.3d at 1180 (summarizing and quoting *Dow*, 995 F.2d at 923). The Ninth Circuit has also recognized that restrictions on where a person may go, such as a condition prohibiting a person from "go[ing] within 100 yards of his former father-in-law's home," are custodial. *See Means v. Navajo Nation*, 432 F.3d 924, 928 (9th Cir. 2005).

Because the in-person check-in requirements and geographic restrictions on travel DHS has imposed on Ms. Garro Pinchi significantly restrain her physical liberty, the Court likely has jurisdiction to resolve her habeas challenge to those supervisory conditions. And as the government confirmed at the hearing, the digital check-in and location-monitoring requirements were imposed at the same time as and are inextricably intertwined with the physically restraining conditions, so they must be considered together with the restraining conditions as part of Ms. Garro Pinchi's custody. The Court therefore turns to the merits.

**B.    Ms. Garro Pinchi's due-process challenge to the new conditions is likely to succeed.**

Ms. Garro Pinchi argues that DHS's imposition of the new supervisory conditions violates her procedural due-process rights under the Fifth Amendment. That argument is likely to succeed.

The Due Process Clause protects all persons in the United States, including noncitizens, from deprivations "of life, liberty, or property" by the federal government "without due process of law[.]" U.S. Const. amend V; *see also Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "Freedom from imprisonment" and "other forms of physical restraint … lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690. Even when the government has discretion to restrict an individual's physical liberty, its subsequent decision not to do so creates "an implicit promise" that she will not be restrained absent a change in circumstances, such as a violation of existing supervisory conditions. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). Ms. Garro Pinchi therefore has a protected liberty interest in not being subject to supervisory conditions that impose physical restraints.

To determine what procedures are constitutionally sufficient to protect petitioners' liberty interest, the Court applies the test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). That test requires balancing the following three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335. Each of these factors supports Ms. Garro Pinchi's constitutional right to a hearing before a neutral decisionmaker prior to the imposition of the new supervisory conditions.

***First,*** Ms. Garro Pinchi's private interest is substantial. As already explained, freedom from physical constraint is a core concern of the Due Process Clause, and the new supervisory conditions imposed by DHS curtail Ms. Garro Pinchi's physical liberty by compelling her in-person attendance at check-ins for hours every month and circumscribing her freedom of movement.

United States District Court
Northern District of California

***Second,*** the risk of an erroneous deprivation "is also great, because no procedures were used at all: [the new conditions] were imposed pursuant to [DHS's] unilateral discretion. The risk of erroneous deprivation becomes overwhelmingly high when immigration officers act with unrestrained discretion … without an individualized showing of why [additional restraints are] warranted or an effective process for noncitizens to challenge the exercise of such discretion." *Harrington*, 2026 WL 800113, at *6 (citation modified) (quoting *Pichardo Medina v. Hermosilla*, No. 3:25-CV-02233-MC, 2025 WL 3712271, at *4 (D. Or. Dec. 22, 2025)).

And the record provides no reason to think the government has a legitimate basis for imposing the new conditions. The Supreme Court has recognized only two constitutionally permissible reasons for imposing physical constraints attendant to civil immigration proceedings: where doing so is necessary to "ensure[] the appearance of aliens at future immigration proceedings" or to "prevent[] danger to the community." *Zadvydas*, 533 U.S. at 690. As already noted, the government necessarily determined that the original terms of Ms. Garro Pinchi's release in April 2023 were sufficient to guard against any risk of flight or danger to the public. *See Garro Pinchi III*, 813 F.Supp.3d at 1035–36. So absent a material change in circumstances, there is no basis to impose additional conditions.

A violation of the conditions of Ms. Garro Pinchi's original release might constitute such a change. The available record does not, however, support a finding that the new supervisory conditions were based on such a violation. The government has suggested only one potential violation by Ms. Garro Pinchi: her alleged failure to appear for a mandatory check-in with DHS on May 16, 2023. Even assuming that a violation occurring more than two years before Ms. Garro Pinchi's July 2025 detention could justify the imposition of such conditions following her court-ordered release, the only evidence the government provides to show that violation is a declaration from a deportation officer.[6] But the officer's attestation that Ms. Garro Pinchi failed to appear was not based on any apparent personal knowledge, nor was it based on documentary evidence confirming her failure to appear. Rather, the officer based his assertion on the lack of internal DHS

---

[6] Li Decl., Dkt. No. 16-1 ¶¶ 11–13.

United States District Court
Northern District of California

records reflecting Ms. Garro Pinchi's appearance at the May 16, 2023 check-in. "[A]bsence of evidence," however, "is not always evidence of absence." *Int'l Ass'n of Machinists & Aerospace Workers, Loc. Lodge 964 v. BF Goodrich Aerospace Aerostructures Grp.*, 387 F.3d 1046, 1055 (9th Cir. 2004). Here, substantial countervailing evidence suggests that Ms. Garro Pinchi appeared for the check-in. Most directly, she attests based on personal knowledge that she did so, recounting her attendance in detail.[7] Additionally, the form documenting DHS's imposition of new supervisory conditions in July 2025 included a section for "[r]elevant [i]nformation" concerning her "[r]isk of [f]light," yet the form contains no mention of any failure to appear for the May 16, 2023 check-in.[8] And the government spent months litigating Ms. Garro Pinchi's due-process challenge to her detention without ever asserting that she had failed to appear at any check-in. The record thus strongly suggests that Ms. Garro Pinchi attended the check-in, and that no violation of her original supervisory conditions detracts from her interest in maintaining those conditions.

The risk that Ms. Garro Pinchi's physical liberty is being erroneously deprived without a permissible reason and the value of the additional safeguard of a hearing before a neutral immigration judge are therefore quite high.

***Third,*** the government's countervailing interest in imposing additional supervisory conditions on Ms. Garro Pinchi is minimal for the reasons just discussed—nothing in the record suggests that she is either a flight risk or danger to the public, and no other basis supports its imposition of supervisory conditions that restrain her physical liberty.

Because each of the *Mathews* factors supports Ms. Garro Pinchi's right to a hearing before a immigration judge prior to the imposition of the new supervisory conditions, she has shown a likelihood of success on the merits of her due-process challenge.

---

[7] Garro Pinchi Decl., Dkt. No. 12-2 ¶¶ 4–5.

[8] ATD Change of Status Form, Dkt. No. 16-1, at 8.

10

United States District Court
Northern District of California

## II.    The Remaining *Winter* Factors

Because Ms. Garro Pinchi's due-process challenge is likely to succeed on the merits, she has also established the remaining *Winter* factors favor a modification of the preliminary injunction. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). And as already discussed, DHS has shown no legitimate interest in immediately subjecting Ms. Garro Pinchi to stringent new supervisory conditions because nothing in the record suggests that she is a flight risk or danger to the community. "Should an IJ determine at a hearing that the monitoring measures imposed here are necessary, [DHS] will of course be free to reimpose them." *Harrington*, 2026 WL 800113, at *7. In the meantime, any "potential harm to the government is minimal—at most, a short delay in detaining [Ms. Garro Pinchi] if it ultimately demonstrates … that [new supervisory conditions are] necessary." *Jorge M.F. v. Wilkinson*, No. 21-cv-01424, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021). More generally, the government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983); *see also Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (holding that the government "cannot suffer harm from an injunction that merely ends an unlawful practice" implicating "constitutional concerns"), *abrogated on other grounds by Jennings v. Rodriguez*, 583 U.S. 281 (2018). Finally, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023) (citation modified).

## III.    Security

Under Federal Rule of Civil Procedure 65(c), the Court "may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." The rule "invests the district court 'with discretion as to the amount of security required, *if any*," and a "district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining [its]

11

conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (quoting *Barahona–Gomez v. Reno,* 167 F.3d 1228, 1237 (9th Cir. 1999)). Because "[t]he government does not argue that the Court should require [Ms. Garro Pinchi] to give security," and the Courts sees "no plausible argument that [the government] will be harmed by a requirement that it hold a hearing before imposing the contested conditions … [the] Court finds that no security is required here." *Harrington*, 2026 WL 800113, at *8.

## CONCLUSION

For the foregoing reasons, Ms. Garro Pinchi's motion to modify the Court's July 24, 2026 order granting a preliminary injunction (Dkt. No. 33 in *Garro Pinchi v. Mullin*, No. 25-cv-5632), is GRANTED. The government is ORDERED to release Ms. Garro Pinchi from custody, relieving her of supervisory conditions to which she was not subject between April 2023 and July 2025, including by imposing ISAP monitoring. The government is ENJOINED from imposing any new conditions of release on Ms. Garro Pinchi without first providing notice and a hearing to determine whether a material change of circumstances justifies such conditions.

**IT IS SO ORDERED.**

Dated: July 8, 2026

_____
P. Casey Pitts
United States District Judge

United States District Court
Northern District of California